# In the United States Court of Federal Claims

No. 09-314C
(Filed: May 27, 2011)

* * * * * * * * * * * * * * * * * * * *

UNIVERSITY OF KANSAS HOSPITAL
AUTHORITY,

          *Plaintiff*,

v.

THE UNITED STATES,

          *Defendant.*

Contract; Immigration and Customs Enforcement; 8 C.F.R. § 287.7(d)-(e); 42 U.S.C. § 249

* * * * * * * * * * * * * * * * * * * *

*E. Lou Bjorgaard Probasco*, Topeka, Kansas, for plaintiff.

*Michael D. Snyder*, Trial Attorney, Civil Division, U.S. Department of Justice, Washington, D.C., with whom was *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Christine L. Krell*, U.S. Immigration and Customs Enforcement, of counsel.

_____

OPINION

_____

BRUGGINK, *Judge*.

Plaintiff, University of Kansas Hospital Authority, alleges that defendant is obligated to pay the medical bills of an alien who leapt from a fourth floor window of the Sheriff's Office in Wabaunsee County, Kansas. It alleges the existence of a contract as well as liability under various statutes and regulations. It seeks reimbursement of $138,794.22. Pending is defendant's motion to dismiss or, in the alternative, for summary judgment. Plaintiff has cross-moved for partial summary judgment. We heard oral argument on February 28, 2011. For the reasons set out below, we grant defendant's

motion for summary judgment with respect to the contract claims. We dismiss plaintiff's statutory and regulatory claims for lack of subject matter jurisdiction and dismiss plaintiff's taking claim for failure to state a claim. We deny plaintiff's cross motion.

BACKGROUND[1]

On March 1, 2006, Alfredo Contreras-Gonzalez was arrested by the Kansas State Highway Patrol. He was carrying 50 pounds of marijuana and a firearm when he was arrested. On March 2, Immigration and Customs Enforcement ("ICE") sent a notice of detainer that was dated November 9, 2005, to the Wabaunsee County Sheriff's Office.[2] The detainer informed the recipients that it was "for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work and quarters assignments, or other treatment which he or she would otherwise receive." The box indicating that an "investigation has been initiated to determine whether this person is subject to removal from the United States" was checked. The detainer further informed the recipients that regulations required them to detain the alien for up to 48 hours and requested that ICE be notified prior to the inmate's release or in the event of the inmate's death. The detainer indicated that Agent Wayne House was the ICE officer who was handling Contreras-Gonzalez's immigration case.

---

[1] The background facts have been taken from the parties' proposed findings of fact, to the extent they are undisputed.

[2] ICE is authorized to issue such detainers by 8 C.F.R. § 287.7(a) (2009):

> Any authorized immigration officer may at any time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

Wabaunsee County offered Contreras-Gonzalez a diversion of his pending charges, which he accepted. The agreement was filed with the District Court of Wabaunsee County on March 28, 2006, and Contreras-Gonzalez was released from the Wabaunsee County Sheriff's Office. He was then transferred to the Sheriff's Office in Shawnee County, Kansas because of separate charges pending against him.

On April 5, Contreras-Gonzalez posted bail and was released from the custody of Shawnee County. That same day, he returned to the Wabaunsee County Sheriff's Office to retrieve his personal items. Upon arrival, he was placed in a room on the fourth floor.[3] After he was left in the room alone, he jumped out of the window, suffering serious injuries which required immediate medical care. Plaintiff provided the necessary emergency medical care on April 5 and continued to provide medical treatment to Contreras-Gonzales until April 27, 2006.

On May 18, 2009, plaintiff brought this action. It contends that defendant entered into an implied-in-fact contract to reimburse it for treating Contreras-Gonzales. In the alternative, it contends that it is the beneficiary of a third-party beneficiary contract between Wabaunsee County and defendant. Also, it contends that either 42 U.S.C. § 249 (2006) or 28 C.F.R. § 287.7 (2009), when read in conjunction with 8 U.S.C. § 1357 (2006), mandates that defendant pay plaintiff.

DISCUSSION

I.   Defendant did not enter into an implied-in-fact contract with plaintiff.

Pursuant to the Tucker Act, we have jurisdiction over "any claim against the United States founded upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a) (2006). Plaintiff contends that we have jurisdiction, either because it has identified a money-mandating statute or because it has established the necessary elements of an implied-in-fact contract. In considering a motion to dismiss, we construe

---

[3] It is contested whether he was "guided" into the room or was forcibly placed in the room, but Contreras-Gonzalez was nevertheless left alone in a room on the fourth floor of the Sheriff's Office.

the allegations of the complaint favorably for the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

Plaintiff contends that an implied-in-fact contract arose between plaintiff and defendant when Agent House issued a detainer to hold Contreras-Gonzales. In order for an implied-in-fact contract to exist between the United States and another party, four elements must exist: 1) mutuality of intent to contract; 2) consideration; 3) lack of ambiguity in offer and acceptance; and 4) the representative must have actual authority to bind the government in contract. *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) (citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)).

In its complaint, plaintiff alleges each of the requisite elements of an implied-in-fact contract. These allegations are a sufficient invocation of the court's subject matter jurisdiction for the purposes of Rule 12(b)(1): "the invocation of the implied contract theory is sufficient . . . to set forth a basis for subject-matter jurisdiction, because the [plaintiff] has made a non-frivolous assertion of an implied contract with the United States." *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998). We turn, therefore, to the parties' alternative cross-motions for summary judgment, as to which they have furnished proposed findings of facts, supported in part by materials outside the complaint.

We grant a motion for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits" demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c)(1). Summary judgment is appropriate when, "drawing all justifiable inferences in the nonmovant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l*, 631 F.3d 1279, 1282-83 (Fed. Cir. 2011).

Although plaintiff has alleged the proper elements of an implied-in-fact contract, it has not presented any issue of material fact in the face of defendant's evidence that Agent House did not have the necessary authority to bind the United States in contract. Further, there is no issue of fact regarding the other elements of an implied-in-fact contract. The outcome here is controlled by the Federal Circuit's decision in *El Centro*.

In *El Centro*, a group of illegal aliens had been injured in an automobile accident while fleeing from United States Border Patrol Agents. The Border

Patrol Agents came to their aid, called for assistance, and had the aliens sent to the hospital. Border Patrol Agent Mario Hernandez arrived at the hospital prior to the injured persons. When asked at the hospital who would be paying for the aliens' treatment, Hernandez replied, "me and you." *Id.* at 818. Hernandez instructed the hospital to notify him prior to the release of the aliens so they would be discharged directly into the custody of Border Patrol. While the aliens were hospitalized, Border Patrol photographed them, and at least one INS investigator signed the aliens' consent forms on the line marked "Patient/Parent/Conservator/Guardian" when the alien was unable to sign for himself. *Id.* After the hospital did not receive payment for its services, it sued the Immigration and Naturalization Service ("INS") under several theories, including formation of an implied-in-fact contract.

Even with such a degree of involvement by INS, the Federal Circuit determined that no implied-in-fact contract was formed, primarily because Agent Hernandez did not have contracting authority. "[I]n the case before us there was no promise, certainly no express promise, by an official empowered to bind the Government to pay for the care rendered. [Plaintiff] has not shown that any individual with contracting authority exercised that authority to bind" the government. *El Centro*, 922 F.2d at 821.

When filing a motion for summary judgment, the moving party "bears the burden of establishing the absence of any genuine issue of material fact." *Dzuris v. United States*, No. 99-5162, 2000 WL 366293, at *2 (Fed. Cir. April 7, 2000). As in *El Centro,* defendant here has presented an uncontested affidavit that Agent House did not have contracting authority. In that affidavit, the Supervisory Acquisition Career Manager for the United States Immigration and Customs Enforcement declared that, "we do not have any record of . . . ever issuing a contracting warrant to . . . Agent Wayne House. . . . Agent Wayne House . . . do[es] not have the authority to enter into a contract on behalf of ICE . . . ." Def. Mot. to Dismiss Ex. B. The only relevant authority Agent House possessed was to issue the detainer, which was directed at, and delivered to, the Wabaunsee County Sheriff's Office, not to plaintiff. Agent House had no authority to instruct plaintiff to hold Contreras-Gonzalez or to treat him.[4]

---

[4] He also did not participate in any discussion with plaintiff pertaining to Contreras-Gonzalez's treatment.

In attempting to rebut defendant's evidence, plaintiff, as non-movant, "must set forth evidence that is more than merely colorable." *Id.* "[A] party opposing summary judgment must set out specific facts showing a genuine issue for trial." *Zenith Elecs. Corp. v. PDI Commc'n Sys.*, 522 F.3d 1348, 1363 (Fed. Cir. 2011). Plaintiff has failed to do so. In its complaint, plaintiff alleges:

> Special Agent Wayne House had the authority to issue detainers under 8 CFR 287.7(b) and, therefore, had the authority to bind the government to the terms of the implied contract, making defendant liable for the [sic] Mr. Contreras-Gonzalez's medical treatment in the amount of $138,794.22, subject to the applicable Medicare adjustment.

Amend. Compl. ¶61. Plaintiff does not expand its argument in its response to defendant's motion for summary judgment. Plaintiff merely argues that, in addition to the authority to issue detainers, ICE agents have other miscellaneous authorities. They may, for example, interrogate aliens, administer oaths, take evidence concerning immigration into the United States, and execute warrants, among others. *See* 8 C.F.R. §§ 287.5 - 287.8.

None of these authorities are legally sufficient to constitute an authority to contract. The Federal Circuit, in *El Centro*, held that these general law enforcement powers are insufficient. There is nothing in the statutory or regulatory provisions granting ICE agents authority that creates an implication of authority to contract on behalf of the government. In addition, defendant has provided evidence that Agent House was not specifically granted any additional contracting authority.

Plaintiff's argument fails on another element of an implied-in-fact contract as well—there is no fact question regarding mutuality of intent to contract. The detainer was issued to law enforcement agencies, not to the hospital. There is no evidence that Agent House made any representations to the hospital prior to its accepting Contreras-Gonzalez as an emergency patient. Plaintiff does not allege that Agent House spoke to any member of the hospital staff or any of the doctors who were caring for Contreras-Gonzalez. Agent House did not interact with the hospital until Contreras-Gonzalez was about to be released. Consequently, there could have been no mutuality of intent to contract between the government and the hospital.

Plaintiff argues in the alternative that it is a third-party beneficiary of a contract between defendant and Wabaunsee County. We disagree. Issuance of a detainer to a law enforcement agency does not create a contractual obligation between ICE and the recipient of the detainer. On its face, the detainer provides that it is "for notification purposes only." It thus cannot constitute an offer from ICE to the Wabaunsee County Sheriff's Office to enter into a contract. Nor is there evidence of negotiations or communications between Agent House and the local law enforcement agencies regarding plaintiff providing medical care to Contreras-Gonzalez.

There is no genuine issue of material fact that the elements necessary for an implied-in-fact contract or a third-party beneficiary contract do not exist. We therefore grant defendant's motion for summary judgment with respect to the contract counts.[5]

II.    42 U.S.C. § 249 is not a money-mandating statute.

We next address plaintiff's claim that we have jurisdiction based on 42 U.S.C. § 249. It is well-settled that, in order for this court to have jurisdiction pursuant to a statute or regulation, it must be amenable to interpretation "as mandating compensation by the Federal Government for the damages sustained." *Mitchell v. United States*, 463 U.S. 206, 218 (1983). The language of the statute or regulation does not have to be explicit; rather, what is required is that under a fair interpretation the statute or regulation is "reasonably amenable to the reading that it mandates a right of recovery in damages." *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472-73 (2003); *see Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006). Mere permission to pay is insufficient; the statute or regulation must *mandate* compensation.

Plaintiff claims that 42 U.S.C. § 249 constitutes such a mandate. This section provides:

Medical care and treatment of quarantined and detained persons

(a) Persons entitled to treatment. Any person when detained in

---

[5] This also disposes of plaintiff's claim based on the Contract Disputes Act, 41 U.S.C. § 605 (2006). In order to have a dispute regarding a contract, there must be a contract in the first instance.

7

>accordance with quarantine laws, or, at the request of the Immigration and Naturalization Service, any person detained by that Service, may be treated and cared for by the Public Health Service.
>
>(b) Temporary treatment in emergency cases. Persons not entitled to treatment and care at institutions, hospitals, and stations of the Service may, in accordance with regulations of the Surgeon General, be admitted thereto for temporary treatment and care in case of emergency.
>
>(c) Authorization for outside treatment. Persons whose care and treatment is authorized by subsection (a) may, in accordance with regulations, receive such care and treatment at the expense of the Service from public or private medical or hospital facilities other than those of the Service, when authorized by the officer in charge of the station at which the application is made.

42 U.S.C. § 249. It is undisputed that the term "Service" in paragraph (c) refers to the Public Health Service.

The Federal Circuit has ruled that this statute is not money-mandating and thus does not create jurisdiction under the Tucker Act. *El Centro*, 922 F.2d at 819. In *El Centro*, the Federal Circuit determined that the statute "does not *mandate* compensation, but simply provides authorization for payment when properly requested and authorized by the designated government agent." *Id.* at 819. Here, it is undisputed that no one from the Service authorized care for Contreras-Gonzalez at an outside facility.

Absent such advance authorization, the statute places no obligation on defendant to pay plaintiff for the care it provided to Contreras-Gonzalez. We therefore grant defendant's motion to dismiss this aspect of plaintiff's claim for lack of jurisdiction.

III.  8 C.F.R. § 287.7 is not a money-mandating regulation.

In its cross-motion for summary judgment, plaintiff argues that 8 C.F.R. § 287.7, when read together with 8 U.S.C. § 1357, is a money-mandating regulation which creates an obligation on the part of the United States to pay the hospital for its services.

Insofar as relevant, 8 C.F.R. § 287.7 states:

(d) Temporary detention at Department request. Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department.

(e) Financial responsibility for detention. No detainer issued as a result of a determination made under this chapter I shall incur any fiscal obligation on the part of the Department, until actual assumption of custody by the Department, except as provided in paragraph (d) of this section.

8 C.F.R. § 287.7 (d)-(e). Although subparagraph (e) indicates that the government assumes no fiscal responsibility until actual detention by the department, plaintiff contends that Wabaunsee County lawfully took temporary custody of Contreras-Gonzalez. This assumption of custody, plaintiff argues, thus triggered the "except as provided" language in subparagraph (e), causing ICE to be fiscally responsible for the 48 hours Wabaunsee County was to maintain custody of Contreras-Gonzalez under subparagraph (d).

Plaintiff then relies on 8 U.S.C. § 1357(d), which provides:

(d) Detainer of aliens for violation of controlled substances laws. In the case of an alien who is arrested by a Federal, State, or local law enforcement official for a violation of any law relating to controlled substances, if the official (or another official)--

>   (1) has reason to believe that the alien may not have been lawfully admitted to the United States or otherwise is not lawfully present in the United States,

>   (2) expeditiously informs an appropriate officer or employee of the Service authorized and designated by the Attorney General of the arrest and of facts concerning the status of the alien, and

9

> (3) requests the Service to determine promptly whether or not to issue a detainer to detain the alien,

the officer or employee of the Service shall promptly determine whether or not to issue such a detainer. If such a detainer is issued and the alien is not otherwise detained by Federal, State, or local officials, the Attorney General shall effectively and expeditiously take custody of the alien.

8 U.S.C. § 1357(d). Plaintiff argues that because this section instructs the Attorney General to take custody when a local law enforcement agency is holding the alien, the government has an obligation to assume custody of said alien as quickly as possible. Therefore, although ICE did not take Contreras-Gonzalez into custody immediately, it should be deemed to have taken custody, and therefore, plaintiff concludes, ICE should be liable for the medical bills incurred pursuant to 8 C.F.R. §287.7(d).

We do not follow plaintiff's argument. There is no language in 8 U.S.C. § 1357(d) requiring the Wabaunsee County Sheriff's Office to take the alien into custody. Rather, the statute provides that the Attorney General "shall expeditiously take custody of the alien" and gives no instruction to the entity that arrested the alien in the first place. 8 U.S.C. § 1357(d).[6]

Moreover, even if subsections 287.7(e) and 287.7(d) did impose a money mandate, they do not provide jurisdiction over plaintiff's claim because the hospital is not in the class of plaintiffs meant to be protected by the regulation.[7] 8 C.F.R. § 287.7(d) does not contemplate a third party in the

---

[6] Although plaintiff bases its argument on this statute, the source of plaintiff's argument actually arises in 8 C.F.R. § 287.7: "Upon a determination by the Department to issue a detainer for an alien not otherwise detained . . . such agency shall maintain custody of the alien for a period not to exceed 48 hours." 8 C.F.R. § 287.7(d).

[7] Even if there is a money mandate in a statute, a plaintiff must be within "the particular class of plaintiffs" meant to be protected by the statute. *Greenlee County, AZ v. United States*, 487 F.3d 871, 876 n.2 (Fed. Cir. 2007); *see also Bormes v. United States*, 2010 U.S. App. LEXIS 23611 (Fed. Cir. 2010).

detainer process. Rather, the subsection instructs a law enforcement agency in receipt of a detainer to keep the alien in custody for 48 hours. There are only two parties mentioned: ICE and the law enforcement agency. Therefore, the language in 287.7(e) that refers back to 287.7(d), "except as provided in paragraph (d) of this section," does not impose an obligation upon ICE to pay a third party for an alien's medical care.

The only mandate in subsection 287.7(e) is that ICE *shall not* incur financial responsibility due to a detainer. The exception that follows addresses 287.7(d), which does not itself mandate the payment of money, nor does it contemplate a third party in its scheme.[8] Because there is nothing in the statutory scheme or the regulation that indicates that a third party should recover any funds due to the issuance of a detainer, we do not have jurisdiction over plaintiff's claim.

Defendant correctly notes that it could only be liable for the hospital's expenses if there were an agreement between ICE and the State of Kansas providing for such compensation. The Attorney General is authorized to enter into agreements with local entities to furnish medical care to detainees pursuant to 8 U.S.C. § 1103 (a)(11)(A). That statute provides that the Attorney General is authorized

> to make payments from funds appropriated for the administration and enforcement of the laws relating to immigration, naturalization, and alien registration for necessary clothing, medical care, necessary guard hire, and the housing, care and security of persons detained by the Service pursuant to Federal law under an agreement with a State or political subdivision of a state.

8 U.S.C. § 1103 (a)(11)(A). No such agreement was offered into evidence.

More importantly, even if there was an agreement as contemplated in 8 U.S.C. § 1103 between defendant and the state, it would not cover the third party hospital now suing the government. We therefore find that 8 C.F.R.

---

[8] It is unnecessary to determine if the regulation would impose a money mandate if plaintiff were a law enforcement agency that had incurred medical expenses.

§ 287.7(e), even in conjunction with 8 U.S.C. § 1103 (a)(11)(A), does not impose a mandate for defendant to pay a third party when it incurs monetary loss from assisting an illegal alien. We grant defendant's motion to dismiss the claims based upon this regulation.

V.   Plaintiff does not plead the requisite elements of a taking.

Plaintiff also argues in a cursory way that defendant has committed a taking under the Fifth Amendment of the United States Constitution, over which we would have jurisdiction under the Tucker Act. The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. In order to plead a taking claim, there must be a valid property interest that has been taken, and that taking must have been the result of governmental action. *See Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1212-13 (Fed. Cir. 2005).

When questioned about its taking claim at oral argument, plaintiff could not identify the relevant property interest taken. Nor could counsel identify any governmental action that caused a taking. Even if we decided that the health services provided to Contreras-Gonzales constituted a property interest protected under the Fifth Amendment, there was no federal action that directed the "taking" of those services. We thus grant defendant's motion to dismiss plaintiff's claim based on a Fifth Amendment taking pursuant to Rule 12(b)(6).

## CONCLUSION

For the reasons stated above, we deny plaintiff's cross motion for summary judgment and grant defendant's motion for summary judgment regarding plaintiff's contract claims. We also dismiss plaintiff's statutory and regulatory claims for lack of subject matter jurisdiction and plaintiff's taking claim pursuant to Rule 12(b)(6). The Clerk is directed to enter judgment accordingly. No costs.

s/ Eric Bruggink
ERIC G. BRUGGINK
Judge
